IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELSEVIER, INC., et al., :
:
Plaintiffs, :
v. : 3:10-CV-02513
: (JUDGE MARIANI)
COMPREHENSIVE MICROFILM & :
SCANNING SERVICES, INC., et al., :
:
Defendants. :

## MEMORANDUM OPINION

### I. Procedural History

On October 23, 2013, this Court held a telephone conference call with counsel regarding a discovery dispute that recently arose. Following a Rule 16 conference on October 15, counsel for the Plaintiffs and Third Part Defendants[1] purportedly informed counsel for the Defendants that Third Party Defendant Anthony DeStephen would be unable to attend trial due to illness and infirmity. (*See* Pls.' Letter of Oct. 22, 2013, Doc. 130, at 2.) Defendants maintained that DeStephen should attend trial, but that, even if he did not, Defendants should be allowed another chance to depose him in lieu of live testimony. DeStephen's counsel countered that DeStephen had already been deposed at length twice and that, given his infirmity, another deposition would be unduly burdensome.

---

[1] The same attorneys represent both the Plaintiffs and the Third Party Defendants.

At the conclusion of the hearing, the Court requested briefing by the parties on this one remaining issue, to wit: whether the Defendants should be allowed a third deposition of Anthony DeStephen. In an Order issued the following day, the Court also requested any evidence establishing DeStephen's age and the extent of his illness and/or infirmity that the parties might have. (*See* Doc. 146.) Both parties timely submitted their materials. (*See* Docs. 147-49.)

Included with Third Party Defendants' Brief was a sworn affidavit from Anthony DeStephen. (Doc. 149.) Therein, DeStephen declared that he is 76 years old and suffers from Amyotrophic Lateral Sclerosis ("ALS"). (*Id.* at ¶¶ 1-2.) He was diagnosed with ALS five years ago, at which time he "was told that [his] prognosis was three to five years, and that [his] condition would continue to deteriorate as the disease advanced." (*Id.* at ¶ 5.) Currently, the Declaration states, DeStephen is wheelchair bound, "entirely dependent" on his son's assistance with "daily activities, including getting out of bed, using the lavatory, and bathing," (*id.* at ¶ 3), and has not left his house in the past four months, (*id.* at ¶ 4.) To leave the house would require special accommodations for his wheelchair and for the presence of a caregiver. (*Id.*)

Aside from a discussion whether a third deposition was warranted, Defendants also included in their brief a Motion to Compel DeStephen's attendance at trial. (*See* Doc. 147-1 (proposed order to compel).) The motion centered around whether

2

DeStephen and someone named Leslie Crawford[2] are proper subjects of the "100 mile rule" delimiting the District Court's subpoena power. (Doc. 147 at 4-12.) The Third Party Defendants then requested the opportunity to respond to this newly-raised issue (*see* Doc. 148 at 3), which was orally granted via a phone call from the Court's Chambers.

## II. Analysis

A District Court's decisions with respect to discovery disputes and the issuance of subpoenas are reviewed for an abuse of discretion. *Williams v. Morton*, 343 F.3d 212, 222 (3d Cir. 2003); *Angelico v. Lehigh Valley Hosp., Inc.*, 85 Fed. App'x 308, 311 (3d Cir. 2004). In the present case, this discretion extends to both the Motion to Compel and the request for a third deposition, which are factually interrelated. However, because they are conceptually distinct, the Court will address them separately here.

### a. Motion to Compel

Defendants do not appear to dispute that Mr. DeStephen lives more than 100 miles from the Scranton courthouse where the trial will be held. (*See* Doc. 147 at 3.) Instead, Defendants argue that DeStephen falls outside the 100-mile rule, because he is a party witness. (*Id.* at 12.) They argue that, when read in conjunction with Federal Rule

---

[2] The Court will not now rule on whether Leslie Crawford can be forced to testify because, though information on her may have been included somewhere in the voluminous filings in this case, the Court has not been provided presently with any information as to who she is, where she lives, what her role in the case actually is, or what reasons, if any, have been given for her absence. If the parties would like a ruling on Crawford's presence, then the issue should be brought to the Court's attention through the proper procedure of filing a motion with supporting and opposing briefs, in accordance with the Federal and Local Rules.

3

of Civil Procedure 45(c)(3)(A)(ii), the Rule 45(b)(2)(B) limitation of the District Court's subpoena jurisdiction to 100 miles from the courthouse, outside the district, can apply only to non-party witnesses. (*See* Doc. 147 at 7.) The full text of subsection (c)(3)(A) reads:

> (3) *Quashing or Modifying a Subpoena.*
>   (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
>     (i) fails to allow a reasonable time to comply;
>     (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>     (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(c)(3)(A).

Defendants cite various district court opinions to support this proposition. (*Id.* at 6-12.) Nonetheless, it is unnecessary for the Court to even reach this issue, because Defendants ignore the most applicable (c)(3)(A) justification: (iv), which requires a District Court to quash or modify a subpoena that "subjects a person to undue burden."

Accordingly, even if the Court accepted Defendants' arguments on the 100-mile rule, the Court finds it clear that forcing an elderly man in his fifth year of ALS—who is, moreover, so infirm as to require the constant help of a caretaker for even the most basic

4

and personal tasks—to travel to testify in court would constitute an undue burden. Indeed, if, as the Declaration states, DeStephen has not been able to leave his own home for four months, then forcing him to travel over 100 miles to Scranton for the purpose of undergoing what would surely be vigorous cross-examination would not only constitute an extremely significant burden, but would also impose a serious risk of worsening his already fragile condition, both from the inherent stress of the experience and from the hazards that a sickly and immobile man would tend to face from being transported a significant distance for the first time in months. Defendants are correct to note that the alternatives to in-person testimony may be "dry and tedious" and may make it more difficult for the jury to "make credibility evaluations." (Doc. 147 at 4.) Without minimizing the importance of these concerns, the Court cannot conclude that they outweigh the very substantial, even life-threatening, burdens that DeStephen would face if his appearance were compelled.

Therefore, upon finding that an undue burden exists, the Court not only may, but, under the text of the Rule, *must* refuse to compel DeStephen to appear in person at trial.[3]

### b. Request for a Third Deposition

---

[3] Even though the Rule references motions to quash or modify a subpoena, the same concerns apply here.

Under Federal Rule of Civil Procedure 32(a)(4)(C), depositions are admissible "for any purpose" if the witness is unavailable at trial due to illness or infirmity. FED. R. CIV. P. 32(a)(4)(C). Because DeStephen is unavailable due to illness and infirmity, the depositions already taken are admissible at trial.

However, the Defendants would like the Court to go a step further. Specifically, Defendants indicate that if the Court will not compel DeStephen's appearance, then they at least want another opportunity to depose him in the format of a trial deposition. So far, DeStephen has been deposed twice. (*Id.* at 3.) However, the first two depositions were discovery depositions. (*Id.*) Defendants note that, "[d]iscovery depositions while helpful are not comparable to cross examination of a litigant and serve different purposes." (*Id.* at 4.)

Under Federal Rule of Civil Procedure 30,

> (2) A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2):
>     (A) if the parties have not stipulated to the deposition and: . . .
>         (ii) the deponent has already been deposed in the case[.]

FED. R. CIV. P. 30(a)(2)(A)(ii). Rule 26(b)(2) allows the Court to limit the use of depositions, in relevant part when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action,

and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii).

The federal courts clearly favor the taking of depositions and will prohibit their use only on a heightened showing of good cause. *See, e.g., United States v. Mariani*, 178 F.R.D. 447, 448 (M.D. Pa. 1998) ("It is rare for a court to issue a protective order that prohibits a deposition. A party seeking to obtain a protective order to avoid the taking of a deposition bears a heavy burden.") (internal citations omitted); *Fanelli v. Centenary Coll.*, 211 F.R.D. 268, 270 (D.N.J. 2002) (discussing and explaining the "expressed preference" for videotaped depositions and noting that "absent special circumstances, protective orders should not serve to interfere with court proceedings") (internal citations and quotation marks omitted).

However, this case is different from the standard request for a protective order for two reasons.

First, there is the high risk of severe harm to DeStephen, the proposed deponent. Though the risks are less pronounced than they would be if the Court were to compel in-person testimony, they are still significant. The purpose of allowing a third deposition appears to be simply to be able to conduct a cross-examination that would mimic as closely as possible the conditions of live testimony at the trial. (*See* Doc. 147 at 4 (arguing that a videotaped trial deposition is preferable to a discovery deposition

7

transcript because the latter are "not comparable to cross examination," whereas videotaped trial depositions better allow the jury to evaluate the witness's credibility).) But cross-examination is by its nature a stressful experience, whether done inside or outside the courtroom. Considering Mr. DeStephen's significant infirmity, the Court finds the danger that such stress might cause to be too pronounced. In so deciding, it acts consistently with other courts in this Circuit, which have from time to time prevented depositions based on an elderly and infirm deponent's health concerns. *See, e.g., Mariani*, 178 F.R.D. at 451 ("It is undisputed that Louis Serafini suffers from a severe coronary artery disease and congestive heart failure that threatens his life on a daily basis. Louis Serafini is critically ill with an inoperable coronary condition that could result in his death at any moment. Although the government contends that there is a very small risk that Louis Serafini will suffer a heart attack as a result of the stress associated with a deposition, I am not willing to take such a chance."); *In re Tutu Water Wells Contamination CERCLA Litig.*, 189 F.R.D. 153, 157 (D.V.I. 1999) ("In balancing the Esso Defendants' alleged need for redeposition against the existence of depositions previously taken of Gal [an 81-year-old man with heart problems] and the state of Gal's health, this Court will not order a further deposition of Gal. No deposition under these circumstances is worth risking a man's life . . . .").

Second, the fact that Defendants have already had two chances to depose DeStephen is significant. *Cf. Tutu Water Wells*, 189 F.R.D. at 157 (finding the fact "previous depositions have been taken on numerous occasions" of the infirm deponents to weigh in favor of a protective order). This Court recognizes the different purposes served by discovery depositions and trial depositions, and it does not deny that there may be many situations in which granting leave to take an additional trial deposition of an unavailable witness is appropriate. However, the fact that two depositions have already been taken, combined with the facts of DeStephen's poor health, weigh heavily against allowing a third, in whatever form. In order to overcome the Court's concerns for DeStephen's health, Defendants would have to make a compelling showing that the existing depositions are so inadequate as to justify the significant burdens that would be necessary to procure a third. This they have not done. They have made no showing that the existing deposition transcripts are substantively deficient or would somehow prevent them from communicating needed information to the jury. Rather, they only argue that reading the transcripts aloud would be "tedious" and would deprive the jury of the ability to evaluate DeStephen face-to-face. These are legitimate concerns, but they do not override the concerns already discussed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Compel Anthony DeStephen's presence at trial (Doc. 147) and Defendants' alternative oral request for a third deposition of Mr. DeStephen are **DENIED**. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge