## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELSEVIER, INC., et al., | : |
| | : |
| **Plaintiffs,** | : |
| v. | : **3:10-CV-02513** |
| | : **(JUDGE MARIANI)** |
| **COMPREHENSIVE MICROFILM &** | : |
| **SCANNING SERVICES, INC., et al.,** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion for Judgment as a Matter of Law (Doc. 197) filed by the Plaintiffs in the above-captioned lawsuit.  A jury trial was held in this case in late 2013, which concluded with a verdict holding Defendant Comprehensive Microfilm Scanning Services, Inc. liable to the Plaintiffs for innocent copyright infringement.  Notwithstanding the overall favorableness of the judgment, the Plaintiffs now argue that the jury verdict was deficient in two respects that caused them prejudice.  For the reasons that follow, the Court will deny Plaintiffs' Motion on both grounds.

### II.    Factual Background and Procedural History

Because the factual background of this case is intimately familiar to all parties and has been discussed at length by this Court before, (see Mem. Op. Denying Summ. J., Doc. 120, at 1-9), a detailed discussion of the facts of the case is unnecessary here.  Briefly, the lawsuit involves allegations that Defendant James Wasilewski and his closely-held

corporation,[1] Defendant Comprehensive Microfilm Scanning Services, Inc., illegally copied 2,515 copyrighted academic periodicals under an agreement with Third-Party Defendant Anthony DeStephen and DeStephen's own company, Princeton Micro Scan. The Plaintiffs—various academic publishing companies—are the rightful copyright owners.

A jury trial was held from December 9, 2013 through December 12, 2013. After deliberation, the jury found Comprehensive Microfilm liable for infringement of each of the 2,515 copyrighted works. (*See* Jury Verdict, Doc. 192, at 1, 7.) However, it also found that all 2,515 infringements qualified as "innocent infringements" entitled to reduced damage awards under the Copyright Act. (*Id.* at 9-10.) The jury then proceeded to assess a total $1.5 million in damages against Comprehensive, (*id.* at 15), which, after being offset to account for a related settlement and judgment, resulted in a net judgment of $285,000, (*see* Judgment, Doc. 193, at 1). The jury found insufficient evidence to conclude that James Wasilewski copied any of Plaintiffs' copyrighted works, and therefore assessed no liability against him. (*See* Doc. 192 at 1.) It also found that the Third Party Defendants—at whose request the Defendants allegedly copied the offending materials—were not liable to the Defendants for misrepresentation. (*Id.* at 17.) No one has challenged the jury's determination as to the Third Party Defendants.

---

[1] James Wasilewski testified at trial that he himself owns eighty percent of Comprehensive Microfilm and that his wife owns the remaining twenty percent. (James Wasilewski Trial Test., Dec. 10, 2013, Doc. 176, at 7:2-3.)

2

After the entry of judgment, Plaintiffs timely filed the instant Federal Rule 50(b)

Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Doc. 197),

having properly moved for Judgment as a Matter of Law under Rule 50(a) at trial, and the

Court having denied the relevant portion of that Motion and submitted the question to the

jury. (See Trial Tr., Dec. 11, 2013, at 173:2-174:25.)  Plaintiffs' 50(b) Motion asks the Court

to modify the jury verdict on two grounds.  First, Plaintiffs argue that Comprehensive

Microfilm cannot be considered an innocent infringer as a matter of law under the Copyright

Act and request that the Court accordingly find Comprehensive's infringement non-innocent.

(Pls.' Br. in Supp. of Renewed Mot. for JMOL, Doc. 198, at 2-5.)  Second, they argue that

the jury verdict is inconsistent insofar as it holds that Comprehensive Microfilm, as an entity

acting through James Wasilewski, copied the relevant works but that James Wasilewski

personally did not.  On this latter argument, it requests that Wasilewski be held liable for

infringement along with Comprehensive.  (Id. at 6.)

While this Motion was pending before the Court, Plaintiffs moved to withdraw the

portion of the Motion that requested a new trial.  (See Pls.' Mot. to Partially Withdraw

Renewed Mot. for JMOL or for a New Trial, Doc. 229.)  The Court granted that latter Motion.

(See Order, July 2, 2014, Doc. 231.)  Accordingly, the Court now analyzes Plaintiffs' Motion

only insofar as it requests judgment as a matter of law.

## III.    Standard of Review

Under Federal Rule of Civil Procedure 50(a),

3

[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

    (A) resolve the issue against the party; and

    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Under Rule 50(b),

[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). A renewed motion for judgment as a matter of law under Rule 50(b)

should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find [for the nonmovant]. In determining whether the evidence is sufficient to sustain [the jury's verdict], the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (internal citations

omitted). "[T]he court should review the record as a whole, [but] must disregard all evidence

favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

"[J]udgment as a matter of law should be granted sparingly . . . ." *CGB Occupational*

*Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004). Nonetheless,

4

"more than a scintilla of evidence is needed to sustain a verdict. Accordingly, 'we will grant judgment as a matter of law where the record is critically deficient of the minimum quantum of evidence in support of the verdict.'" *Id.* (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003) (internal alterations omitted).

## IV. Analysis

### a. Innocent Infringement

#### i. Applicability as a Matter of Law

The Copyright Act allows a copyright owner whose works are infringed to elect "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). The default damage award is "a sum of not less than $750 or more than $30,000" per infringement. *Id.* However,

> [i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

*Id.* at § 504(c)(2).

In the present case, the jury found that all 2,515 infringements were innocent and assessed a total statutory damage award of $1.5 million. (Doc. 192 at 9-10, 15.) This equals an average award of $596.42 per infringement, which is within the acceptable range for innocent infringement.

5

Plaintiffs now argue, however, that a finding of innocent infringement is precluded as

a matter of law. (Doc. 198 at 3-4.) They base their argument on section 401 of the

Copyright Act. That section provides that

> [w]henever a work protected under this title is published in the United States
> or elsewhere by authority of the copyright owner, a notice of copyright as
> provided by this section may be placed on publicly distributed copies from
> which the work can be visually perceived, either directly or with the aid of a
> machine or device.

17 U.S.C. § 401(a). "The notice shall be affixed to the copies in such manner and location

as to give reasonable notice of the claim of copyright." *Id.* at § 401(c). If these prerequisites

are satisfied, i.e.,

> [i]f a notice of copyright in the form and position specified by this section
> appears on the published copy or copies to which a defendant in a copyright
> infringement suit had access, then no weight shall be given to such a
> defendant's interposition of a defense based on innocent infringement in
> mitigation of actual or statutory damages . . . .

*Id.* at §401(d).

Congress framed section 401(d) in terms of "evidentiary *weight.*" Nonetheless, the

courts that have dealt with this issue have consistently treated that section in a manner that

implies that, when a copyright notice appears on a work, that notice precludes an innocent

infringement defense as a matter of law. *See Matthew Bender & Co., Inc. v. West Publ'g*

*Co.,* 240 F.3d 116, 123 (2d Cir. 2001); *Lowry's Reports, Inc. v. Legg Mason, Inc.,* 271 F.

Supp. 2d 737, 753 (D. Md. 2003); *Columbia Pictures, Inc. v. Tucker,* 1997 WL 779093, at

*9-11 (N.D. Ill. 1997); *Columbia Pictures Indus., Inc. v. Richardson,* 1996 WL 928200, at *3-

4 (W.D. Wis. 1996); *see also Maverick Recording Co. v. Harper*, 598 F.3d 193, 198-99 (5th

Cir. 2010) (holding same in the context of identically worded 17 U.S.C. § 402(d), which

accords "no weight" to the innocent infringement defense in the context of phonorecords).

Moreover, even though Defendants argue that "section 401(d) is . . . inapplicable to this

matter [because] images available to Defendants were smaller than a postage stamp" and

were "incredibly minute," (*see* Defs.' Opp. to Pls.' Mot. for JMOL, Doc. 200, at 9), such an

argument would be unavailing in the face of a properly published copyright notice under

section 401. That section specifically states that a notice of copyright is sufficient so long as

it can be "visually perceived . . . with the aid of a machine or device," 17 U.S.C. § 401(a),

which, in this case, would presumably be satisfied by the aid of a microfilm reader.

Regulations promulgated by the Register of Copyrights provide a non-exhaustive list

of certain "specific methods of affixation and positions of notice on various types of work"

that would be sufficient to "give reasonable notice of the claim of copyright." *Id.* at § 401(c).

This list is published at 37 C.F.R. § 201.20. It lists ten such available methods under the

heading "Works published in book form." These methods include reproducing the notice on

the title page, the front or back cover, and the first or last page of the main body of the work,

among others. *Id.* at § 201.20(d).[2]

---

[2] The Court finds that the relevant means of affixation in this case pertains to the notice reproduced in the originally published book, not any notice that may be reproduced on the microfilm. For one reason, the testimony in this case indicates that Third Party Defendant Anthony DeStephen created the microfilm, whereas Plaintiffs created only the physical journals. Obviously, DeStephen's actions in illegally microfilming Plaintiffs' books without Plaintiffs' consent should not be permitted to alter Plaintiffs' legal rights. Moreover, the Copyright Act itself protects "original works of authorship fixed *in any tangible*

Here, the parties stipulated that copyright notices appeared on all 2,515 works, (see

Pls.' Pretrial Mem., Doc. 156, at 5-6), and read that stipulation to the jury, (see Trial Tr., Dec

9, 2013, 73:21-24 (American Chemical Society); id. at 104:14-17 (Wiley); Trial Tr., Dec. 10,

2013, 28:1-4 (Elsevier).). Representatives of the various Plaintiffs also testified that

copyright notices appeared in each work. (See Eric Slater Trial Test., Dec. 9, 2013, 87:5-13

(American Chemical Society); Annie Roberts Trial Test., Dec. 10, 2013, 33:9-1 (Elsevier).)

With the exception of Eric Slater's testimony on behalf of the American Chemical Society

(which only concerns the location of the notice), none of the testimony or stipulations

indicated where in each work and in what size the notices were reproduced, only that they

were reproduced in some form somewhere within the works.[3] Moreover, despite the

---

medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a) (emphasis added). The Supreme Court has relied on this language to conclude that "the transfer of a work between media does not alter the character of that work for copyright purposes." New York Times Co., Inc. v. Tasini, 533 U.S. 483, 502, 121 S. Ct. 2381, 2392, 150 L. Ed. 2d 500 (2001) (manifesting agreement with the quoted statement, taken from a party's brief) (internal alterations and quotation marks omitted). Thus, the mere fact that these works had been transferred to microfilm does not change their original character as print journals for copyright purposes.

[3] Mr. Slater testified:

First and foremost, we put a copyright notice on all our journals. It appears or accompanies each individual article that we publish, there's also a copyright notice on the mast head page of our journal, and just so the jury, I guess, knows what we're talking about, that's the little C in the circle, that's the copyright notice that you see on publications.

(Slater Test. at 87:5-10.)

The Court also notes that Plaintiffs' counsel misread one stipulation to the jury, and told it: "Each of the aforementioned copyrighted journals that ACS owns contains copyright notices on the face of the journals." (Trial Tr., Dec. 9, 2013, at 79:21-24 (emphasis added).) This could have been a grave error, because the stipulations submitted to the Court do not state where on the journals the copyright notices appeared. (See Doc. 156 at 6.) As events unfolded, however, any error, though uncorrected during trial, appears to be harmless because even if the jury accepted the incorrect stipulation as true, Defendant does not seem to have suffered as a result.

voluminous number of documents that the parties submitted to the Court and the jury,

Plaintiffs did not actually submit copies of the page of each journal where the copyright

notice appeared. Rather, their evidence offered to establish the proposition that copyright

notices existed in a manner that satisfies section 401 comes only from a series of

certificates of copyright registration swearing that the respective Plaintiffs hold valid

copyrights for each of the works in question. (See Pls.' Exs. 2, 4, 6, 11, 13.)

Attorney for the Plaintiffs asked Defendant James Wasilewski to identify the

copyright notice on a sample roll of microfilm during cross-examination. (See Doc. 176, at

25:8-23.) Despite being handed a magnifying glass, Mr. Wasilewski testified that he was

unable to read or otherwise detect any copyright notice. (See id. at 25:24- 26:6.) Notably,

he was able to read other parts of the page. (Id. at 26:7-11.)

Given this background, the Court cannot find that the record was "critically deficient

of the minimum quantum of evidence in support of the verdict" finding innocent infringement.

The Court notes that "[i]t is a well-settled general rule of law that facts which are stipulated

during the course of a trial are to be taken by the jury as conclusively proven." S.E.C. v.

Happ, 392 F.3d 12, 24 (1st Cir. 2004) (quoting Jackson v. United States, 330 F.2d 679, 681

(8th Cir. 1964)); cf. also Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of Law

v. Martinez, 561 U.S. 661, 677-78, 130 S. Ct. 2971, 2983, 177 L. Ed. 2d 838 (2010)

("[F]actual stipulations are 'formal concessions that have the effect of withdrawing a fact

from issue and dispensing wholly with the need for proof of the fact.'") (quoting 2 K. Broun,

McCormick on Evidence § 254, p. 181 (6th ed. 2006) (internal alterations omitted). A reasonable jury could not, therefore, disregard the parties' stipulations and conclude that no copyright notices existed on the works. However, under the Copyright Act and accompanying regulations, it is not enough that the journals merely "contain[ed] copyright notices on them," as the stipulations assert. Plaintiffs would also need to show that those notices were reproduced in each journal in one of the forms prescribed in 37 C.F.R. § 201.20(d), or in another form sufficient to give reasonable notice of the claim of copyright under 17 U.S.C. 401(c).

There are several reasons why the jury may have found that, despite the admitted existence of copyright notices, Comprehensive Microfilm still acted as an innocent infringer. First, not being provided with the original journals, the jury had no concrete, objectively neutral evidence that the notices were provided in the "form and position" specified by the Copyright Act so as to trigger the application of section 401(d). The large compilation of certificates of registration submitted as Exhibits 2, 4, 6, 11, and 13 may be helpful to the jury in proving that copyrights were issued, but they still do not establish that notices of those copyrights were properly affixed to each work. In deciding whether the notices were properly affixed, the jury had to rely primarily on the Plaintiffs' own representations—representations which it was obviously not required to accept as true.

Second, the jury could have taken Mr. Wasilewski's professed inability to read the copyright notice as evidence that the notices were not affixed in a manner reasonably

10

capable of giving notice. While notice may be sufficient "even where it is legible only to someone with excellent vision or if finding it requires close examination," *Metzke v. May Dep't Stores Co.*, 878 F. Supp. 756, 759 (W.D. Pa. 1995) (internal citations and quotation marks omitted), the jury may well have found that under the facts of this particular case, the notice was so illegible as to render it insufficient to invoke 401(d). Of course, the jury was also free to disbelieve Wasilewski's testimony, or to believe that any failure to perceive the notice was due to Wasilewski's own deficient vision or to some other confusion, and therefore find the notice sufficient under the Act. But, given the high deference owed to jury verdicts, the Court is unwilling to say as a matter of law that the jury was wrong if in fact it did consider Wasilewski's testimony as indicative of a lack of reasonable notice. Moreover, even if the Court were to say that, as a matter of law, the jury should have disbelieved Wasilewski, this would still not help the Plaintiffs, because it would show only that notice was properly displayed on the single piece of microfilm that Wasilewski examined during his testimony. It would not show as a matter of law that notice was produced in the same fashion in all of the other journals that Plaintiffs never showed the jury. Moreover, the microfilm that Wasilewski examined is listed on Plaintiffs' exhibit list as "*Exemplars* of Microfilm." (*See* Pls.' Ex. List, Doc. 194, at # 38A) (emphasis added). Being an exemplar, it was admitted for demonstrative purposes only and has not been shown to be a copy of any microfilm at issue in this case.

The Court is aware that, to avoid these problems, Plaintiffs may have had to produce

a great deal of extra material. Merely providing the cover and copyright pages of each

journal would have added approximately 5,000 more pages to a record that already

contains thousands. But Plaintiffs' decision before and during trial not to present this

evidence cannot now provide a sufficient basis to overturn a jury verdict.

### ii. Lack of Constitutional Remedies

However, even if the Court concluded that overturning the jury's finding was required

as a matter of law, constitutional limitations prevent it from granting the remedies that

Plaintiffs seek. The Seventh Amendment to the Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty
> dollars, the right of trial by jury shall be preserved, and *no fact tried by a jury,*
> *shall be otherwise re-examined in any Court of the United States, than*
> *according to the rules of the common law.*

U.S. Const. amend. VII (emphasis added).

The Seventh Amendment provides "large" authority for trial judges to "grant new

trials 'for any of the reasons for which new trials have heretofore been granted in actions at

law in the courts of the United States.'" *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S.

415, 433, 116 S. Ct. 2211, 2222, 135 L. Ed. 2d 659 (1996) (quoting Fed. R. Civ. P. 59(a)).

But the Plaintiffs in this case have expressly withdrawn their request for a new trial. (*See*

Doc. 231 at 2.) As such, the only remedy potentially available would be for the Court itself

to increase the jury's verdict.

12

However, "a court is not at liberty to simply substitute its own judgment as to the amount of damages for the findings of a jury." *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed. Cir. 1995). While a trial judge may *conditionally reduce* a jury award to an acceptable level through the process of remittitur, *see, e.g., Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986), to engage in the opposite process (called "additur") and *increase* a jury award based on findings of fact which the jury never made has been repeatedly condemned as unconstitutional. *See Dimick v. Schiedt*, 293 U.S. 474, 485, 55 S. Ct. 296, 301, 79 L. Ed. 603 (1935) ("[T]he power to conditionally increase the verdict of a jury does not follow as a necessary corollary from the power to conditionally decrease it. As the court below correctly pointed out, in the case of a conditional remittitur, 'a jury has already awarded a sum in excess of that fixed by the court as a basis for a remittitur, which, at least, finds some support in the early English practice; while in the second case no jury has ever passed on the increased amount, and the practice has no precedent according to the rules of the common law.'"); *see also Payton v. Abott Labs*, 780 F.2d 147, 152 (1st Cir. 1985) ("If the court's action is viewed as an additur, it is constitutionally proscribed."); *Hayes v. Cha*, 338 F. Supp. 2d 470, 497 n.10 (D. N.J. 2004) ("[T]he concept of additur would never be applied in federal court."); *Springer v. J.J. Newberry Co.*, 94 F. Supp. 905, 906 (M.D. Pa. 1951) ("This Court has no power to increase the amount of the verdict as it would be a bald addition of something which in no sense can

be said to be included in the jury's verdict, and it would therefore deprive the defendant of his constitutional right to the verdict of a jury.").

Aside from these clear constitutional proscriptions, the rule against additur makes good sense in this case. Any action this Court would take to increase Plaintiffs' jury award would be by its very nature arbitrary, given that we cannot know what precise amount of damages the jury would have assessed had it found Comprehensive not to be an innocent infringer. The Copyright Act specifically states that damages shall be assessed within a wide range, subject to the factfinder's discretion. See 17 U.S.C. § 504(c)(1)-(2). Accordingly, the jury had wide latitude to determine what it believed was the appropriate amount of damages and no one else has any way of knowing how the jury picked the exact number that it did. It follows that, if the jury had found Comprehensive's infringement to be non-innocent, the Court could not know where within the $750 to $30,000 damage range the jury would, in its discretion, have rested. Any attempt to answer such a question would usurp the jury's constitutional function to decide the facts free of reexamination by the Court.

Accordingly, by voluntarily moving to dismiss their own request for a new trial, Plaintiffs have eliminated their only plausible source of relief and therefore rendered their requested remedy unavailable. Even if the Court found an innocent infringement defense precluded as a matter of law, the withdrawal of Plaintiff's request for a new trial would preclude a favorable ruling on their Motion.

14

### b. James Wasilewski's Liability

The second basis of Plaintiffs' Motion is that the jury erred by finding Defendant Comprehensive Microfilm liable for copying the copyrighted works, but did not find James Wasilewski so liable. (Doc. 198 at 6.) This verdict does appear facially inconsistent. Comprehensive Microfilm is a corporation, i.e., a legal entity which can only act through natural persons. Mr. Wasilewski—a natural person—testified that he made "all" of the microfilm copies at Comprehensive. (Doc. 176 at 21:14-18.) Plaintiffs' Attorney William Dunnegan then asked: "So if there were copies made for Mr. DeStephen, you made all of them?," to which Wasilewski answered "Yes." (*Id.* at 21:19-21.) During the jury charge conference, it appeared that the parties did not dispute that any copies that Comprehensive may have made would have been made by Wasilewski, and that if Comprehensive was liable at all, it would be liable for Wasilewski's acts. (Charge Conf. Tr., Dec. 12, 2013, Doc. 196, at 2:18-20 (statement of Plaintiffs' Attorney), 83:4-23 (statement of Defendants' Attorney).) Question 1 on the verdict form submitted to the jury reflects this unanimity on the evidence, by asking:

a. Did Plaintiffs prove by a preponderance of the evidence that James Wasilewski copied Plaintiffs' copyrighted works, as listed in Plaintiffs' Exhibits 1, 3, 5, 10, and 12, without Plaintiffs' permission?

Yes _____ No _____

b. Did Plaintiffs prove by a preponderance of the evidence that *Comprehensive Microfilm, acting through James Wasilewski*, copied Plaintiffs' copyrighted works, as listed in Plaintiffs' Exhibits 1, 3, 5, 10, and 12, without Plaintiffs' permission?

15

Yes _____ No _____

(Doc. 192 at 1 (emphasis added).)

The Court instructed the jury on the law concerning a corporation's vicarious liability

for the acts of its employees, agents, directors, and officers. (See Jury Charge, Doc. 189, at

15.) It informed the jury that a corporation such as Comprehensive Microfilm "can only act

through its employees, agents, directors, or officers" and may be liable for such people's

acts that are "performed within the scope of their authority." (Id.) However, the Court also

instructed the jury that Comprehensive Microfilm could only be found liable if James

Wasilewski was found liable first:

> If you find that James Wasilewski copied the microfilm journals at issue and thereby infringed the Plaintiffs' copyright in those journals, then you may consider the Plaintiffs' claim that Comprehensive Microfilm is liable for the vicarious infringement of that copyright.   The existence of "vicarious infringement" means that James Wasilewski was acting on behalf of Comprehensive Microfilm when he made the copies.

(Id.) Further emphasizing the fact that Comprehensive could only be liable for Wasilewski's

acts, the Court instructed the jury again, in a section entitled "Conclusion: Direct and

Vicarious Infringement," that "[i]f you find that the Plaintiffs have not proven that Defendant

Wasilewski directly copied the original elements from the copyrighted works, then your

verdict should be for the Defendants." (Id.)

Despite these instructions, the jury no answered "No" to the first question and "Yes"

to the second. (Doc. 192 at 1.) That is, it found that James Wasilewski did not copy any of

16

the copyrighted works, but that Comprehensive Microfilm, acting through James

Wasilewski, did. While the jury has the right to find whatever facts it believes were proven,

its verdict is nonetheless inconsistent. Plaintiffs therefore ask the Court to "hold Mr.

Wasilewski individually liable as a matter of law." (Doc. 198 at 6.) But the Court cannot do

so, for a variety of reasons.

The mere existence of an inconsistent verdict does not necessarily warrant post-trial

relief. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000)

("Inconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of

themselves, be used to overturn otherwise valid verdicts.") Moreover, the Third Circuit has

held that a district court may not enter judgment as a matter of law—the specific remedy

requested here—simply because the jury returned inconsistent verdicts. *See Mosley v.

Wilson*, 102 F.3d 85, 89-90 (3d Cir. 1996).

> Indeed, the inappropriateness of entering judgment as a matter of law solely
> on the basis of inconsistent verdicts is evident in the procedural requirements
> for such a judgment established by the Federal Rules of Civil Procedure. A
> motion for judgment as a matter of law rendered after trial must be made on
> grounds that were previously asserted in a motion for directed verdict prior to
> submission of the case to the jury. Obviously the inconsistency of the verdicts
> could not have been raised in a motion for directed verdict prior to jury
> deliberations.

*Id.* at 90 (internal citations omitted).

"The closest analog [to the present situation] in the Federal Rules of Civil Procedure

appears in Rule 49(b) which considers the appropriate course when a jury returns

inconsistent answers to interrogatories or when a general verdict is accompanied by one or

17

more inconsistent interrogatory answers." *Id.* at 89. However, as in *Mosley*, not even Rule

49(b) is directly on point here. The jury's verdict contains no inconsistency between

answers to interrogatories and the general verdict; it simply contains an inconsistency

between two general verdicts. [4] That is, only one Defendant was found liable when the

Defendants should rise or fall together.

In analyzing this unusual issue of conflicting general verdicts, the *Mosley* court found

Justice Stevens's dissenting opinion in *Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct.

1571, 89 L. Ed. 2d 806 (1986), persuasive. *Mosley*, 102 F.3d at 90.[5] "Justice Stevens's

dissent [discussed] at some length whether inconsistent general verdicts in a civil case

---

[4] Though the verdict form, as reproduced above, phrases these verdicts in the form of interrogatories, the questions function as determinations of general liability. The question of whether the Defendants copied original elements of the copyrighted work was the only determination that needed to be made to establish liability according to the Court's jury instructions. The Instructions stated:

> On Plaintiffs copyright infringement claims, the Plaintiffs have the burden of proving both of the following by a preponderance of the evidence:
>
> > (1) The plaintiff is the owner of a valid copyright; and
> >
> > (2) The defendant copied original elements from the copyrighted work. . . .
>
> In this case, both sides agree that Plaintiffs Elsevier et al. owned valid copyrights for all of the 2,515 works at issue. Therefore, I instruct you that the Plaintiffs have met their burden on this element.
>
> However, there is a dispute as to whether some or all of the Defendants copied original elements from any of the copyrighted works. The Plaintiff must prove by a preponderance of the evidence that this copying occurred. *If you find that the copying did in fact occur, then I instruct you that the copying constituted a copyright infringement*, unless you find that an affirmative defense applies and that that affirmative defense has been proven by a preponderance of the evidence.

(Doc. 189 at 14 (emphasis added).) Thus, the jury knew that a decision on whether the Defendants copied original elements from the copyrighted works was the equivalent of a finding of liability on the infringement claim. Their decisions are therefore the equivalent of general verdicts. Rule 49, which assumes that a jury answers special interrogatories that logically precede a separate general verdict, does not apply.

[5] The relevant portion of Justice Stevens's opinion is not inconsistent with the *per curiam* opinion from which he dissents. It merely elaborates what Justice Stevens considered to be established propositions of law that he believed the short *per curiam* opinion overlooked.

18

should be allowed to stand" and "noted that when faced with apparently inconsistent verdicts in a civil case, the district court can take several approaches." *Id.* Of the four approaches that Justice Stevens discussed, two are potentially applicable here: the Court could either "allow the apparently inconsistent verdict to stand" or it could "order an entirely new trial." *Id.* at 90-91.[6]

The quoted language in *Mosley* and *Heller* indicates that the district court is vested with discretion in choosing which approach to take. In the due exercise of this discretion, and when the Court considers Plaintiffs' request for relief in light of the procedural history of this case (which is unusual in its own right), the Court finds that allowing the inconsistent verdict to stand best advances the interests of justice in the particular circumstance present here.

Indeed, following the opposite approach and *sua sponte* ordering a new trial weighs against the interests of justice for several reasons. First, as matters now stand, no party has requested a new trial. Though the Plaintiffs requested one at one point, they have since withdrawn that request, for reasons not presented in their motion and on which it would be inappropriate to speculate. This withdrawal indicates that the Plaintiffs now agree with the Defendants (who opposed the original request) that a new trial is inappropriate. But even if that indication is not accurate, at the very least, the Plaintiffs cannot now argue that

---

[6] The other approaches would not apply here. "[A]ttempting to read the verdict in a manner that will resolve the inconsistencies," *Mosley* 102 F.3d at 90, would not work because the inconsistencies are irreconcilable. The final option, to "resubmit the issue to the jury," *id.*, is obviously uavailable.

a new trial best advances the interests of justice when they voluntarily moved the Court to eliminate the new-trial remedy from their own Motion.

Second, all of the cases in which other courts found a new trial appropriate concern challenges to the verdict *by the losing party* when that party was injured by some inconsistency. The Plaintiffs here, however, were the prevailing parties; in requesting a new trial, they would merely argue that the Court should vacate the judgment and convene a second jury trial—at great cost in terms of money and time—simply so that they could obtain an even greater victory than the one they already received. It is an inappropriate use of the public resources for this Court to order a new trial merely to augment the Plaintiffs' $1.5 million jury award.[7]

Justice Stevens's discussion further buttresses the Court's conclusion that letting the verdicts stand is the only appropriate course. As Justice Stevens notes, there are times when letting an inconsistent verdict stand may be appropriate. In particular, the inconsistency can often reflect a compromise among jurors, which, while incongruous from a strictly legal point of view, may embody the community's sense of justice. *Heller*, 475 U.S. at 806 n.12. ("One of the great values of jury trial . . . is its ability to reflect the community

---

[7] The situation might be different if Comprehensive had challenged the verdict on the ground that, the jury having found Wasilewski not liable, it could not reasonably have imposed liability on Comprehensive. Defendants could argue that the Court's instructions told the jury that it could only hold Comprehensive liable "[i]f you find that James Wasilewski copied the microfilm journals at issue." (Doc. 189 at 15.) In light of the considerations discussed *infra*, such an argument may ultimately be unsuccessful, though the Court need not address it here, because it was never raised. Indeed, far from challenging the verdict, Comprehensive defends it with, if anything, *overenthusiasm* and argues that the jury's verdict contains no inconsistency at all. (*See* Doc. 200 at 11-12.)

sense of over-all fairness, and this may not in all cases coincide with the written law and the instructions which the court must give.") (quoting F. James & G. Hazard, Civil Procedure 394 (3d ed. 1985)). This rule may even apply when, in cases of *respondeat superior*, the master is held liable for the acts of the servant even when the servant is not: a holding directly analogous the present case. *See id.* ("[I]n some jurisdictions, 'a master cannot complain solely because the servant was exonerated at the same trial. If the evidence is sufficient to support the verdict against the master, his appeal will be denied.'") (quoting Note, Inconsistent Verdicts in Civil Trials, 45 Harv. L. Rev. 1230, 1234 (1932)). Other courts across the country have adopted this willingness to let inconsistent verdicts stand. *See, e.g., Cash v. Cnty. of Erie*, 654 F.3d 324, 343 (2d Cir. 2011) ("[A]ny inconsistency between general verdicts on [plaintiff's] federal and state claims would not necessarily require retrial."); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003) (explaining "that legally inconsistent verdicts 'may nonetheless stand on appeal even though inconsistent'" and noting that in a previous case the Circuit upheld a jury's right to find a union liable "while 'exonerating the individual defendants' who had acted on behalf of the unions"); *Arthur Pew Constr. Co., Inc. v. Lipscomb*, 965 F.2d 1559, 1571 (11th Cir. 1992) ("No authority is suggested to us that requires that general verdicts be harmonious . . . ."); *Merchant v. Ruhle*, 740 F.2d 86, 91 (1st Cir. 1984) ("We subscribe, therefore, to a substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials."); *Mazloum v. D.C. Metro. Police Dep't*, 576 F. Supp. 2d 25, 40 (D.D.C. 2008) ("Just as in

21

*Mosley,* here [defendant] has offered no authority that supports granting judgment as a matter of law solely on the basis of supposedly conflicting general verdicts. Similarly, he has not moved for a new trial, which the *Mosley* court correctly identified as the only proper remedy.").

Here, the Court believes that the jury's verdict, while anomalous and inconsistent, is not contrary to evidence or law. There was indeed evidence that Comprehensive, acting through James Wasilewski, copied Plaintiffs' copyrighted works, as evidenced most obviously by Wasilewski's admission that he copied the works on Comprehensive's behalf. The fact that the jury did not likewise impose liability on Wasilewski is perplexing, but does not require a new trial in light of all the other considerations in this case, noted above. *Cf. Int'l Longshoremen's & Warehousemen's Union v. Hawaiian Pineapple Co.,* 226 F.2d 875, 881 (9th Cir. 1955) ("As a practical matter it does seem a little difficult to understand why the jury found [the union defendants as entities] liable and did not also hold some of the leaders [who physically engaged in actions on the union's behalf] responsible. However, if there be an inconsistency in the verdicts which *might have justified* a trial court in granting a new trial, it *may nonetheless stand* on appeal even though inconsistent. That is the jury's prerogative.") (emphasis added).

Finally, the Court is aware of the line of cases embodied in *Acumed, LLC v. Advanced Surgical Services, Inc.,* 561 F.3d 199 (3d Cir. 2009) and *Boyanowski v. Capital Area Intermediate Unit, supra* p. 17, which subtly diverges from the *Mosley-Heller* approach

22

adopted here. In these cases, the Third Circuit held that, when a jury found a defendant liable on a specific count, but explicitly found, as part of its ruling on a different count, that the defendant did not engage in the predicate activities that would make the first count actionable, then the Court could grant a Rule 50(b) motion and overturn the jury's finding of liability. *See generally Acumed*, 561 F.3d at 216-18.

The present case falls very close to the line dividing *Acumed* and *Boyanowski* from *Mosley*, in that one could argue that Wasilewski's liability is a factual predicate to Comprehensive's liability. Nonetheless, the Court finds that *Mosley*, not *Acumed*, applies, for two reasons. First, as discussed in footnote 4, *supra*, the finding on Wasilewski is best characterized as the general verdict of a defendant wholly distinct from Comprehensive. The incompatibility in *Acumed* and *Boyanowski* was different, because it arose from a discrepancy between the jury's findings on different counts against the same defendant. While here it may appear inconsistent to find a corporation liable in *respondeat superior* for the acts of an agent who was found not liable, courts have not found this to be a fatal defect rendering either verdict *incompatible* with the other. *Cf. Acumed*, 561 F.3d at 218. In situations like ours, the verdicts simply reflect the liability of two distinct defendants, each of whose verdict, taken on its own, is internally consistent, but which becomes inconsistent only when judged in the light of the other.

Second, even if the Court were to evaluate this case under *Acumed*, to grant judgment in the Plaintiffs' favor would be purely arbitrary. If the Court were to assume that

the jury's verdicts are incompatible, it would still have no way of knowing whether the proper remedy would be to impose liability on Wasilewski (as Plaintiffs request) or to revoke liability from Comprehensive (analogous to the procedure followed in the available precedent). Because the Court cannot possibly know which path the jury would have chosen had it been forced to make this choice, the only resolution capable of both resolving incompatible verdicts and also preserving the jury's prerogatives under the Seventh Amendment would be to vacate the judgment and remand for a new jury trial. But, because Plaintiffs have already withdrawn their request for a new trial, this avenue for relief is closed as well, for the reasons already discussed. Thus, no matter which way the Court evaluates the case, the relief that Plaintiffs seek is unavailable.

## V.   Conclusion

For the foregoing reasons, Plaintiffs' Renewed Rule 50(b) Motion for Judgment as a Matter of Law (Doc. 197) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge

24